#### (Surrogate's Court, Rockland County. November, 1896.)

1. EXECUTORS AND ADMINISTRATORS—PURCHASE BY EXECUTOR OF TESTATOR'S PROPERTY.
   A purchase by an executor of testator's personalty at the inventoried value is invalid, where no effort was made to sell to others at a better price.

2. SAME—INSOLVENT ESTATE—PAYMENT OF MORTGAGES.
   An executor may, though the estate is insolvent, pay a chattel mortgage executed by testator, where it is necessary to save the property from foreclosure, but not where the lien of the mortgage has expired by failure of the mortgagee to renew it, since the mortgagee is in such case entitled only to be paid pro rata with the general creditors.

3. SAME—PAYMENT OF TAXES AND INTEREST.
   An executor may, though the estate is insolvent, pay taxes and interest on mortgages, to protect the real estate from tax sales and foreclosures.

4. SAME—STOCK PLEDGED AS SECURITY—PAYMENT OF DUES.
   An executor may, though the estate is insolvent, pay dues on stock pledged by testator as additional security for a mortgage loan.

5. SAME—ACCOUNTING—PROPERTY PLEDGED AS SECURITY.
   An executor should not be charged, on judicial settlement of his accounts, with the value of stock pledged by the testator as additional security for a mortgage debt, since the estate and the creditors are benefited by the reduction of the mortgage debt by such pledge.

Judicial settlement of the accounts of Erastus Van Houten, one of the executors of the will of Edward C. Van Houten, deceased.

Garrett Z. Snider, for executor.

Wm. P. Bannigan, for executrices.

Alonzo Wheeler, A. A. Demarest, R. S. Harvey, and Geo. A. Wyre, for creditors.

TOMPKINS, S.    Edward C. Van Houten died on the 19th day
of April, 1894, leaving a will by which Erastus Van Houten, the
testator's brother, was appointed executor, and Anna L. Van Hou-
ten, his widow, and Della Van Houten, his daughter, executrices.
The control and management of the estate has been almost exclu-
sively by the executor.    His account was filed on the 9th day of
June last, and is now here for review.    A number of creditors, as
well as the executrices, make objections to the account.    The sub-
stance of the objections is as follows:    That the executor has
failed to charge himself with all the property which has come into
his hands; that he should be charged with the income and profit of
the livery stable business formerly owned by testator, and since his
death conducted by the executor; that he should be charged with
the rental value or use and occupation of the real estate occupied
by him in carrying on the said livery stable business; that he
should not be credited with the amount of $2,961.53, being the ag-
gregate of several chattel mortgages upon the stock in the livery
stable; that he should be charged with property not inventoried:
that he should be charged with uncollected accounts, on the ground
that he has not used due diligence, etc.    The further objection is
made that the executor should not be credited with the sums paid
for taxes, insurance, repairs, and to the building and loan associa-
tion on account of the mortgage held by it on the livery stable prop-
erty; that the executor was negligent in taking a bond and mort-
gage on property sold by the executor to one Benson, which bond
and mortgage was for the full purchase money, and subject to sev-
eral prior mortgages.    It is further contended that the executor
should not be credited with the amount of about $2,048.37 paid to
general creditors of the testator, which amount, it is claimed, is
largely in excess of the pro rata share to which such creditors
will be entitled on a final distribution of the assets of the estate;
that he fails to charge himself with stock in the building and loan
association belonging to the testator.    The executor charges him-
self with the amount of the inventory, to wit, $6,621.03, and the sum
of $88 increase, and the further sum of $125 rents collected, mak-
ing in all the sum of $6,834.03.

There is no proof that any personal property came into the ex-
ecutor's hands prior to the making of the inventory which was not
appraised and inventoried.    That objection is therefore overruled.

At the time of the testator's death, and for some years before,
he was the owner of a livery stable business, and property connect-
ed therewith, in the village of Nyack, which had been for several
years conducted and managed by his brother, the executor.    The
only part the testator had in the management of the business was
the keeping of the account books, which he did in connection with
the butcher business which he also owned, and to which he gave
his personal attention.    This business, it appears from the testi-
mony, was a long-established business, and was known as "Van
Houten's Livery Stable."    By the will, testator disposed of this
business as follows:

"Fifth. I give and bequeath to my brother, Erastus Van Houten, all horses, carriages, robes, harness, and all personal property used in, and in connection with, the said livery stable and the business therein conducted, and the good will of the said business. Sixth. The remainder of my estate is to be used first in the payment of my debts. After that is exhausted, the legacy given to my brother shall next be liable for such debts remaining unpaid."

The will devises and bequeaths all the rest of the estate to his wife and daughter, the executrices, and the will authorizes and empowers the executors to sell any part or all of the real estate or chattels real at public or private sale, etc. At the time of the testator's death he was heavily in debt; the total indebtedness amounting to upwards of $10,000. The real estate was all heavily incumbered. In fact, his estate was insolvent. It was therefore the duty of the executor to marshal the assets, and dispose of the property to the best advantage for the benefit of the creditors. It appears that ever since the testator's death the executor has continued to run and operate the business in the same manner as before; using the real estate in which the business was carried on, and which was owned by the testator, and the horses, wagons, etc. He does not charge himself, however, with any of the proceeds of the business, claiming that he purchased the property at the inventoried price, and converted it to his own personal use, and that he is now, and has been since April 19, 1894 (the date of the testator's death), the owner of the business and property; and he charges himself with the inventoried value of the stock. This alleged sale to himself was without the knowledge of the executrices. There was no attempt on his part to sell to any one else for a better price. The property was never advertised for sale, nor any attempt made on his part to realize a greater sum than the value placed upon it by the appraisers. The inventory is not conclusive of the value of the property appraised, and it is the duty of an executor to sell property in such a manner as to realize the greatest price, regardless of the inventoried value. Here was an old-established business, the good will of which was worth something, and which passed, as an asset of the estate, to the executor, and upon which he should have realized something, or should at least have made an honest effort so to do. The executor has paid no rent for the real estate in which he has carried on the business, and charges himself with none. During a large part of the time since testator's death, he made out bills against patrons of the stable in the name of the estate. I am convinced that the executor has not exercised that care and diligence in handling this property which he owed the creditors of the decedent, and that the pretended sale was illegal and unauthorized; and I accordingly find that the livery stable property is still the property of the estate, and that the decree should direct its sale, and that he is accountable for the inventoried stock which has been sold and traded by him. It follows, then, that the executor is chargeable with the profits of the business carried on by him since testator's death. There is no evidence of what these profits are, although there is proof on the part of the contestants that the gross receipts of the

business during that period were $22,039. The burden of proof of showing the expense and cost of carrying on the business is thrown upon the executor, and I will permit him to discharge that burden upon the settlement of the decree. This disposes of the question of his liability for rent of the stable, because, if it was and is the business of the estate, he is not liable for rent.

It appears that during the testator's life he made several chattel mortgages upon the livery stable property, as follows: On January 20, 1894, one to Tunis Depew, to secure the payment of certain promissory notes indorsed by the said Depew and discounted by the Nyack National Bank, for the sum of $2,250. This mortgage was not renewed as required by the statute, but on the 2d day of April, 1895, the executor, individually and as executor, made a new mortgage to Depew for the same consideration and purpose, and again, on the 1st day of April, 1896, individually only, had another mortgage filed for the same purpose. The mortgage made by the testator ceased to be a lien, as against the creditors, by reason of the failure of the mortgagee to renew it, and Depew then became entitled to only his pro rata share of the estate with the other creditors. There is no proof, however, that Depew was ever called upon to pay the notes, or any part of them. The executor is therefore not entitled to credit for the amount of the Depew mortgage. In respect to the Purdy mortgage, the facts are different. In that case the mortgage was made on the 23d day of January, 1894, and appears to have been given for an indebtedness of the testator to the mortgagee; and when it became due the executor properly paid it, to save a sale of the property covered by it. On the 17th day of December, 1891, the testator made a chattel mortgage to Cunningham Sons & Co. It was renewed from time to time to December 9, 1893, inclusive. It was not again renewed, nor was any attempt made to renew it, until December 11, 1895, when the mortgagee filed a statement showing that there was then due on the mortgage the sum of $413.94. It does not appear that this amount, or any part thereof, has been paid. The same may be said of this claim as of the Depew mortgage. By reason of the failure of the mortgagees to renew it year after year, it became void as to the creditors of the decedent, and the executor had no authority to execute a new mortgage; and the amount thereof, to wit, $475, claimed by the executor, must be disallowed.

The account shows a considerable number of uncollected accounts due the estate, and the executor does not appear to have been as diligent as he should in respect thereto; but, as this will not be a final settlement of his account, he will not be charged with these accounts by the decree to be made hereon.

The executor has paid the sum of $2,465.63 for interest, taxes, insurance, and on account of building and loan association stock. Inasmuch as the estate was insolvent, I think it was proper and prudent for the executor to preserve the real estate by the payment of taxes and insurance, and to prevent foreclosures of the mortgages by the payment of interest. The testator had a number

of shares of stock of the Nyack Building & Loan Association, upon which he had secured a loan for the erection of the livery stable property, and which shares of stock he had pledged to the association to secure the loan. To preserve and protect the property from foreclosure, it was necessary to keep up payments of dues and interest, and he should be credited therewith. He should not be charged on this accounting with the value of those shares of stock, for the reason that they are pledged as aforesaid, and the real estate receives the benefit of the payments, and the creditors receive like benefit, by the fact that the mortgage debt is reduced to the extent of the value of those shares.

The executor seeks credit for $2,048.37 paid to general creditors in full settlement of their claims. The executor claims that these were, or some of them were, paid by claims held against the decedent and offset by agreement between the decedent and these creditors. For such he is entitled to credit, but if he has paid any others, in full or in part, he can only be credited with the pro rata share to which all the general creditors are entitled on a distribution of the estate, if any. The other objections are overruled.

Decree to be settled upon three days' notice, costs to be fixed at that time. Ordered accordingly.